## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEVEN D. OTTO,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-10-2193** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **MICHAEL CURLEY,** *et al.,* | : | |
| | : | |
| **Respondents** | : | |

# M E M O R A N D U M

Petitioner Steven Otto, an inmate currently incarcerated at the State

Correctional Institution in Albion, Pennsylvania ("SCI-Albion"), initiated this action

with the filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on

October 25, 2010, as amended January 13, 2011.  (Doc. 10.)  Petitioner is challenging

his 2004 judgment of sentence imposed by the Court of Common Pleas of Dauphin

County, Pennsylvania ("trial court" or "Dauphin County court").  For the reasons that

follow, the petition will be denied.


I.    **Background**

On July 9, 2004, Petitioner was found guilty of rape by forcible compulsion,

involuntary deviate sexual intercourse by forcible compulsion, sexual assault,

aggravated indecent assault without consent, indecent assault without consent, second

degree robbery, and simple assault following a jury trial in the Dauphin County court.

(Doc. 17-1 at 86-87 (Respondents' Reproduced Record).)  The Pennsylvania Superior

Court summarized the relevant facts as follows:

> The victim was a 21-year-old undergraduate student at York College in York, Pennsylvania.  She testified that at approximately 6:00 a.m. on the morning of January 1, 2004, [Petitioner] entered her bedroom.  The victim did not know [Petitioner] and had never seen him before. [Petitioner was carrying a knife in his hand.  He instructed the victim to be quiet and to remain in her bed.

> [Petitioner] put the knife to the victim's throat and told her not to make any noise.  Terrified, the victim offered to give [Petitioner] "everything" if he would let her be okay.  The victim found $20 and gave it to [Petitioner], who became angry.  The victim then found more money in the drawer beside her bed, and gave [Petitioner] that money as well.  At one point, the victim sobbed out loud; [Petitioner] struck her hard on the side of her face.  The victim blacked out momentarily.

> [Petitioner] ordered the victim to take off all her clothes and proceeded to rape her.  Before he left the house, [Petitioner] demanded the victim's driver's license or identification. [Petitioner] remarked on the victim's age and name, and told her his name, "Steven Otto." [Petitioner] told the victim they would see each other again.

> [Petitioner] left with the victim's money and driver's license.  The DNA profile obtained from [Petitioner]'s blood sample matched the DNA profile obtained from semen recovered from the victim after the incident. The victim positively identified [Petitioner] as the perpetrator.

(Doc. 17-2 at 71-72; *Commonwealth v. Otto*, 754 MDA 2005 (Pa. Super. Ct. Mar 15,

2006)).  On December 3, 2004, the trial court sentenced Petitioner to an aggregate

term of imprisonment of twenty (20) to forty (40) years.  Petitioner was also found to

2

be a sexually violent predator.  Petitioner filed post-sentence motions, and by

memorandum opinion dated March 11, 2005, the trial court denied those motions.  On

December 4, 2006, Petitioner filed a *pro se* petition for post-conviction relief under

Pennsylvania's Post-Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§

9541 *et seq*.  Thereafter, the PCRA court appointed counsel to represent Petitioner and

held a PCRA hearing on April 5, 2007.  On that same date, the PCRA court denied

Petitioner's requested relief.  Petitioner timely filed a counseled appeal with the

Pennsylvania Superior Court.  While a decision was pending, Petitioner raised

additional matters *pro se*.  As a result, on July 15, 2008, the Superior Court directed

Petitioner's counsel to file a petition for remand in order to evaluate Petitioner's

claims.  On August 4, 2008, the Superior Court remanded the matter back to the

PCRA court for appointment of new counsel in order to file an amended PCRA

petition on Petitioner's behalf.  The PCRA court appointed counsel who then filed two

supplements to the PCRA petition on October 28, 2008 and November 17, 2008,

respectively.  On December 2, 2008, the PCRA court held a second PCRA hearing at

which time it denied Petitioner's requested relief.  On December 9, 2008, the PCRA

court directed Petitioner to file a statement of matters complained of on appeal

pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).  Petitioner filed the

3

statement on December 31, 2008.  Thereafter, on April 16, 2009, the PCRA court affirmed the denial of PCRA relief.  On June 22, 2009, Petitioner filed a notice of appeal in the Superior Court.  The Superior Court, in turn, affirmed Petitioner's conviction and denial of PCRA relief on February 18, 2010.  Petitioner then filed a petition for allocatur in Pennsylvania's Supreme Court on March 22, 2010.  The Pennsylvania Supreme Court denied allocatur on August 12, 2010.

Petitioner timely filed the instant petition for writ of habeas corpus on October 25, 2010 (Doc. 1), as amended on January 13, 2011, (Doc. 10).  He also filed a supporting memorandum of law.  (Doc. 11.)  After receiving an extension of time in which to respond to the petition, (*see* Doc. 16), Respondents filed a response to the petition on April 6, 2011, (Doc. 17).  Petitioner filed his reply brief on April 25, 2011, (Doc. 18), with a supplement filed on October 28, 2011, (Doc. 23).  Thus, this matter is now ripe for disposition.

## II.     Standard of Review - AEDPA Merits Review[1]

Section 2254(d) of Title 28 of the United States Code provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999) (emphasis in original). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an

---

[1]  Typically, before a federal court can review the merits of a state prisoner's habeas petition, the court must first determine whether the petitioner has met the requirements of the doctrines of exhaustion and procedural default. However, because Respondents have conceded that Petitioner's petition is timely and his claims properly exhausted, (*see* Doc. 17 at 3), a discussion of whether addressing the merits of the petition is precluded by the one-year federal limitations period set forth in 28 U.S.C. § 2244(d) is not necessary.

outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id*. at 890.

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct.  A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 285-86 (3d Cir. 2000).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  *Mastracchio v. Vose*, 274 F.3d 590, 598 (1st Cir. 2000).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record.  28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278,

6

296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 317 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[2]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362, 410 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-10.

Further, the United States Supreme Court has clarified the test a district court must apply before granting relief where the court finds constitutional error:

> [I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht v. Abrahamson*, 507

---

[2] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the state court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

> U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), whether or not the
> state appellate court recognized the error and reviewed it for
> harmlessness under the "harmless beyond a reasonable doubt" standard
> set forth in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed.
> 2d 705 (1967).

*Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).  Thus, even if the court concludes that

constitutional error occurred in the state court, the court may not grant relief unless the

error "had a substantial and injurious effect or influence in determining the jury's

verdict."  *Brecht*, 507 U.S. at 631; *see also Bond v. Beard*, 539 F.3d 256, 276 (3d Cir.

2008).

III.   **Discussion**

        In his petition, Petitioner makes the following claims: (1) trial counsel was

ineffective for pursuing a strategy that presumed Petitioner had sexual intercourse

with the victim; (2) trial counsel was ineffective on direct appeal for failing to present

evidence that the victim had sexual contact with another person prior to the assault in

order to explain bodily trauma; (3) counsel, at both the trial and appellate levels, was

ineffective for failing to object to inconsistencies between the charges as filed and the

evidence presented against Petitioner;[3] and (4) direct appeal counsel was ineffective

---

        [3]  Before both the state courts and this court, Petitioner stated a layered claim of
ineffective assistance of counsel, separated into three issues.  (*See* Doc. 10-1 at 36-47; Doc. 17-3 at

for failing to challenge the sufficiency of the evidence used to find him guilty of the sexual offenses.  Prior to discussing these claims, the court will set forth the standard for reviewing ineffective assistance of counsel claims.

### A.   <u>Ineffective Assistance of Counsel</u>

The Sixth Amendment guarantees an accused in a criminal prosecution the right to assistance of counsel for his defense.  The applicable federal precedent for ineffective assistance claims is the well-settled two-prong test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  *See also Wiggins v. Smith*, 539 U.S. at 510, 521 (2003) (setting out the *Strickland* test); *Williams*, 529 U.S. at 390-91 (same).  The first prong of the *Strickland* test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 688; *Wiggins*, 539 U.S. at 521.  It follows that when a petitioner claims that his counsel failed to raise a claim that the court determines to be meritless, habeas relief

---

216-220, *Commonwealth v. Otto*, 2117 MDA 2008 (Pa. Super. Ct. Feb. 18, 2010).)  Furthermore, the Pennsylvania Superior Court addressed these issues together in its February 18, 2010 decision affirming the denial of collateral relief.  (*See id.*)  In his traverse, Petitioner replies to Respondents' combined argument with respect to his issues originally number 3, 4, and 5 collectively.  (Doc. 18 at 16-28.)  Consequently, the court will follow the state court and parties' lead and address these three issues together.

under *Strickland* is not available.  *See Strickland*, 466 U.S. at 691 (failure to pursue "fruitless" claims "may not be challenged as unreasonable."); *see also United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999) (stating counsel cannot be deemed ineffective for failing to raise a meritless claim).  A court must indulge a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;" that is, the petitioner must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." *Strickland,* at 688-89, 690-92.  The question is not whether counsel did not err, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place of counsel's conduct.  *Id*.  To that end, a court must conduct an objective review of counsel's performance measured for reasonableness under prevailing professional norms, including a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time. *Strickland,* at 686; *Wiggins*, 539 U.S. at 522-27; *see also Bobby v. Van Hook*, — U.S. —, 130 S. Ct. 13, 16-20 (2009).

The second prong of *Strickland* requires a petitioner to show that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687.  To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id*. at 694.  This standard "is not a stringent one;" it is less demanding than the preponderance standard.  *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999).  Further, a reviewing court need not determine whether counsel's performance was deficient before considering whether the petitioner suffered any prejudice as a result of the alleged deficiency.  *Strickland*, 466 U.S. at 697.  If it is easier to dispose of an ineffectiveness claim for lack of requisite prejudice, that course should be followed.  *Id*.

In addition, the reviewing court must evaluate counsel's performance in light of the totality of the evidence.  *Strickland*, 466 U.S. at 695-96; *see also Jacobs v. Horn*, 395 F.3d 92, 106-07 (3d Cir. 2005).  It is the petitioner's burden to establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  *Strickland*, 466 U.S. at 697; *see also Jacobs*, 395 F.3d at 102.

At the time the state courts reviewed the claims that Petitioner's counsel was arguably ineffective, *Strickland*'s familiar two-pronged test was the "clearly established federal law" applicable to ineffective assistance of counsel claims.  Under Pennsylvania state jurisprudence, a three-prong test is applied to ineffective assistance

of counsel claims, but is, in substance, identical to the *Strickland* test.  *See, e.g.,*
*Commonwealth v. Pierce*, 527 A.2d 973, 975-77 (Pa. 1987).  The Third Circuit Court
of Appeals has held that Pennsylvania's test for assessing ineffective assistance of
counsel claims is not contrary to *Strickland*.  *Jacobs*, 395 F.3d at 107 n.9; *Werts*, 228
F.3d at 204.  Thus, under § 2254(d)(1), the relevant inquiry in assessing
ineffectiveness claims that have been adjudicated on the merits is whether the state
court's decision involved an unreasonable application of *Strickland*.  *Jacobs*, 395 F.3d
at 107 n.9; *Werts*, 228 F.3d at 204.  Further, under § 2254(d)(2), the relevant inquiry is
whether the state court made unreasonable factual determinations when deciding
whether the petitioner received constitutionally effective counsel.  *Bond*, 539 F.3d at
279.

Finally, Petitioner's claims of ineffective assistance of appellate counsel must
be examined under the same *Strickland* standards cited above: 1) whether counsel's
performance was unreasonable; and 2) whether counsel's unreasonable performance
actually prejudiced the defense.  *Strickland*, 466 U.S. at 687.  If a court finds no merit
in a claim of ineffective assistance by trial counsel, appellate counsel cannot be found
ineffective for failing to raise those same meritless issues on appeal.  *See United States*
*v. Cook*, 45 F.3d 388, 392-93 (10th Cir. 1995) ("When a defendant alleges his

appellate counsel rendered ineffective assistance by failing to raise an issue on appeal, we examine the merits of the omitted issue.  If the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel.") (citations and quotations omitted).

> **B.    Ineffectiveness for Pursuing a Strategy that Presumed Petitioner Had Sexual Intercourse with Victim**

Petitioner first claims that trial counsel was ineffective for pursuing a defense strategy of consent that presumed that he had sexual intercourse with the victim. Upon review, the court finds Petitioner is not entitled to relief on this claim.

The court notes the following background on this issue with respect to the state court record.  Initially, from an overall review of the trial transcript, it is noted that trial counsel did not argue at any point during the trial that Petitioner had sexual intercourse with the victim.  (*See* Doc. 17-1 at 120-259, N.T. Trial 7/6-9/2004.) Rather, trial counsel's questioning of each relevant witness suggested that Petitioner's version of the events in question was different from that of the victim, not simply that sexual intercourse had occurred and that it was consensual.  (*See id*.)  In fact, Petitioner testified as to his version of the events.  Specifically, Petitioner testified that he and the victim were talking in the house, then went upstairs to her bedroom and kissed.  (Doc. 17-1 at 222-23.)  He stated that the victim patted him on his stomach

and put her hands down his pants where they may have brushed by his penis.  (*Id*. at 223.)  He stated that they then fell asleep until he was awoken by a phone call and then he left.  (*Id*.)

During her closing argument, Petitioner's trial counsel made this argument using Petitioner's version of the events:

> [Petitioner] told you that when he got into her bedroom, he got on the bed and they fell off, and he told you he didn't observe any injuries on [the victim].  He didn't slide off the bed.  And what injuries did she have?  She had two superficial scrapes on her neck and head swelling on the side, redness.  Concussion could also be caused by falling off and hitting your head.

> [Petitioner] told you he was in a good mood.  She was in a good mood.  Giggling going on.  They are having a good time.  Some kissing going on.  These are not easy or comfortable things to talk about, but [Petitioner] did.  I have to do the same. [Petitioner] indicated to you as they were kissing, he got sexually aroused, an erection.  She was patting him on the stomach, touched him on the penis.

> What happens to a man when he's sexually aroused?  He has an erection.  There's some seminal fluid that's emitted.  The serologist told you that any seminal fluid contains spermatozoa.  How did the semen end up on her chest?  [Petitioner] is honest.  He said I don't know.  I know she touched me.

> * * *

> [I]t's certainly feasible that after she touched him, that there was some minor seminal fluid on her hands and that she touched herself with it elsewhere.

14

* * *

> But the most important part of it is that the neutral evidence, the DNA and the semen, those people have nothing to win or gain by coming here. That evidence does not back up [the victim's] version of events. If [Petitioner] was going to come in here and lie to you about this, why would he not have said, oh, well, sure, we had consensual oral sex and I did penetrate her digitally, but she wanted it.

> Would not that have been the easiest thing for him to say if he was going to lie to you? At least that would have corroborated some of the things that [the victim] said to you, would have made it a heck of a lot easier for [Petitioner], but he didn't do that. He just told you the way it was.

(*Id*. at 237-38.)

Petitioner raised this claim in the PCRA proceedings. In its decision dated December 2, 2008, the PCRA court rejected Petitioner's claim, concluding, in part, the following: "We have reviewed again thoroughly the trial transcript, and Attorney Mahoney never presented the case as consensual sex to the acts that the victim testified to, but rather by explaining the presence of her client's ejaculate on the victim's body by this method." (Doc. 17-3 at 97.) Further, in its February 18, 2010 decision affirming the PCRA court's decision, the Pennsylvania Superior court concluded as follows:

> [Petitioner] first claims that the trial court should have found that trial counsel was ineffective in pursuing a defense strategy that presumed [Petitioner] had sexual contact with the complainant. Following our

15

> review, we agree with the assessment of the trial court that this claim is
> frivolous since (1) the evidence that [Petitioner's] sperm was found on
> the complainant's chest - and not an allegedly defective defense strategy -
> compelled the defense to present a theory that at least some consensual
> contact had occurred between [Petitioner] and complainant, and (2) trial
> counsel never conceded that [Petitioner] had penetrated the complainant.
> Thus, [Petitioner] was not entitled to relief based on this claim.

(Doc. 17-3 at 212-13, *Commonwealth v. Otto*, No. 2117 MDA 2008 (Pa. Super. Ct.

Feb. 18, 2010.)

After reviewing the record, the court finds this decision to be neither contrary to

nor an unreasonable application of federal law.  *See* 28 U.S.C. § 2254(d)(1).  Nor has

Petitioner demonstrated that the state court's adjudication of this claim "resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  *See* 28 U.S.C. § 2254(d)(2).

Importantly, it is noted that the state court made a factual finding as to this issue when

it reviewed the record and determined that Petitioner had failed to show that trial

counsel pursued a defense strategy of consent with respect to the victim's account of

the sexual contact.  Pursuant to 28 U.S.C. § 2254(e)(1), this court must defer to the

factual findings of the state courts unless Petitioner rebuts the presumption of

correctness by clear and convincing evidence.  In the instant petition, Petitioner claims

he had no sexual contact with the victim, and that his trial counsel was incorrect in

16

saying that Petitioner had sexual intercourse with the victim.  However, reviewing the trial transcript as a whole, the court finds no such concession by counsel.  Further, the state court record belies Petitioner's own defense with the evidence of Petitioner's sperm on the victim and Petitioner's testimony at trial, both which left Petitioner's counsel with no other option but to concede that Petitioner had some sexual contact with the victim.  This concession does not suggest sexual intercourse by penis, nor does it reach as far as a defense strategy of consent to sexual intercourse.  Therefore, relying on the presumption of correctness and absent any proffer of contrary evidence by Petitioner, the court must accept the state court's decision that trial counsel never presented a defense strategy of consent, and therefore, was not deficient.  Habeas relief on this ground will be denied.

### C.     **Ineffectiveness for Failing to Present Evidence that Victim had Sexual Contact with Another Person to Explain Vaginal Trauma**

Petitioner also claims that trial counsel was ineffective for failing to present evidence that the victim had sexual contact with another person prior to the assault in order to explain the victim's vaginal trauma.  Upon review, the court finds that Petitioner is not entitled to relief on this claim.

The court notes the following background on this issue with respect to the state court record.  Initially, the court notes that at the beginning of the trial and prior to the

jury hearing the case, counsel addressed several preliminary matters with the trial court.  One of the issues Petitioner's counsel raised was her motion for leave to pierce Pennsylvania's Rape Shield at trial.  Specifically, Petitioner's counsel stated as follows:

> I would argue that the evidence - - the proffer of evidence is that the complainant in this case, [victim], indicated to medical personnel that she had prior consensual oral sex the evening of this incident with another person.

> \* \* \*

> I would argue that this testimony is relevant to attack [victim's] credibility.

> She's going to testify that a number of things occurred that evening.  The intent of the defense would be to attack her credibility in terms of time frame as to - - in which this happened, the people who were in the house, the people who may or may not have heard things, as well as the fact she was intoxicated.

> And it would be the defense that [victim] would have had consensual sexual relations with [Petitioner] as well as other people during the course frame of this party and that because [Petitioner] was somebody who was a stranger to her, this is something that she regretted the following morning, and that's her motivation for the complaint.

(Doc. 17-1 at 126-27.)  After hearing argument from both counsel, the trial court denied the motion to pierce the Rape Shield law, and therefore defense counsel was not permitted to raise the above-referenced defense.  (*See id*. at 127.)  Further, at the

18

May 14, 2007 PCRA hearing, the victim testified that hours prior to the assault, she willingly performed oral sex upon another male, but had no sexual contact involving her genitalia or area surrounding her genitalia. (Doc. 17-2 at 101-03.)

Petitioner raised this claim in the PCRA proceedings. In its decision dated December 2, 2008, the PCRA court made a factual finding that Petitioner's argument of ineffectiveness relating to the victim's prior sexual history on the night in question was meritless. The relevant language is as follows:

> Next, the [Petitioner] argues that counsel was ineffective for failing to properly present a basis to pierce the Rape Shield Act and that, in addition, trial counsel was ineffective in presenting the case at the outset on the basis that the sexual acts occurred in a consensual nature.
>
> We note that the trial transcript in this regard contains a reference to the rape shield issue being raised by both the Commonwealth and the [Petitioner] as trial presented. Judge Uhler asked for a proffer in this regard. Counsel presented their proffers, and he ruled that reference to a prior sexual act that [the victim] engaged in was and would not be properly admitted into the trial of this proceeding.
>
> In that regard and this matter we referenced to our earlier PCRA ruling and proceeding arose as a result of [the victim] upon presenting to the York Hospital for a rape kit development and evaluation advised that she had engaged in a consensual sexual act at some point shortly before this sexual assault occurred.
>
> Trial counsel endeavored to introduce that at the outset of the trial, and in that regard, we note that the Rape Shield Act in Pennsylvania is codified within the Crimes Code at 3104 and specifically prohibits evidence of and inquiry into a victim's past sexual conduct unless there is

19

evidence of past sexual conduct between the Defendant and the alleged
victim or where such evidence becomes otherwise admissible pursuant to
the rules of evidence.

This issue again was developed at our prior PCRA hearing at
which [the victim] testified that within an hour or two prior to the assault
by the [Petitioner], she had engaged in a voluntary sexual act with
another person by performing oral sex on that person.  She testified there
was no force involved in that.

The physical evidence presented upon her presentation at York
Hospital for the rape kit analysis involved an examination of her genital
area, which produced some evidence of redness and swelling, abrasion
types of indicia, that to the labia, no sperm identified in or about the
vaginal vault, no specific findings about the anus or rectum area, and no
physical findings within the mouth of the victim.  Swabbings of the area
about or between her breasts indicated and subsequently identified as
sperm and DNA linking that to this [Petitioner].

We conclude on this analysis that Judge Uhler was correct in his
application of the rape shield statute to this proceeding.

(Doc. 17-3 at 174-75.)  In its February 18, 2010, decision affirming the denial of

collateral relief, the Pennsylvania Superior Court reviewed this claim and found as

follows:

[Petitioner] presently argues that the trial court should have found
that trial counsel was ineffective in the presentation of the motion to
pierce the rape shield because she focused exclusively upon the proffer of
prior sexual activity as evidence of consensual sexual relations with
[Petitioner].  However, the record belies this contention since trial
counsel also argued that the prior sexual activity could be used to
impeach complainant's credibility as a witness - an argument that was

20

considered and rejected by the trial court. . . . Thus, we find no merit to [Petitioner's] argument on this issue.

[Petitioner] further argues that the trial court should have found that prior appellate counsel was ineffective for failing to claim on direct appeal that the denial of the motion to pierce the rape shield was error. The record here reveals that the fact that complainant had engaged in a consensual sexual activity with a third party approximately one to two hours before the alleged attack by [Petitioner] did not contradict any of the substantive testimony given by complainant. Moreover, the offer of prior sexual conduct provided no basis for impeachment of complainant's testimony based upon an ability to recall, recollect, or recount the events surrounding the attack, a bias against [Petitioner], or a motivation to fabricate her testimony. Finally, as the trial court observed, evidence that complainant had performed consensual oral sex prior to the alleged attack did not provide an alternate explanation for the forensic evidence regarding vaginal penetration of complainant or the presence of [Petitioner's] sperm on the complainant's body. In short, there was no substantive merit to [Petitioner's] underlying argument that the evidence of prior sexual conduct was admissible. Thus, we conclude that [Petitioner] was not entitled to PCRA relief based upon his claim that prior appellate counsel was ineffective for failing to challenge the trial court's ruling that the Pennsylvania Rape Shield Law excluded evidence of the prior sexual activity of complainant.

(Doc. 17-3 at 215-16.)

After reviewing the record, the court finds this decision to be neither contrary to nor an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1). Nor has Petitioner demonstrated that the state court's adjudication of this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2).

Importantly, it is noted that the state court made a factual finding as to this issue when it reviewed the record and determined that Petitioner had failed to show that trial counsel was deficient for failing to present evidence of the victim's prior sexual contact with another person to explain the victim's vaginal trauma. Pursuant to 28 U.S.C. § 2254(e)(1), this court must defer to the factual findings of the state courts unless Petitioner rebuts the presumption of correctness by clear and convincing evidence. In the instant petition, Petitioner claims that the physical evidence presented at trial and the evidence that the victim was "involved in sexual intercourse with a third party just one to two hours before her accusation against the defendant," support his contentions. (Doc. 10-1 at 15.) Further, in his traverse, Petitioner claims that he was not charged "for any conduct of sexual intercourse to the complaintives [sic] vagina." (Doc. 18 at 11.) As a result, Petitioner argues, he could not have been the cause of any vaginal trauma to the victim. However, after reviewing the state court record as a whole, the courts finds that this record belies Petitioner's assertions. First, trial counsel did attempt to pursue the matter of prior sexual conduct of the victim at the outset of the trial, but the trial court denied counsel's motion with respect to the issue, and thus counsel was simply not permitted to present such evidence. Further, counsel raised the issue again during the PCRA proceedings, but the victim clearly

22

testified that she had prior sexual contact with another person, and that contact was limited to her performing oral sex upon that individual.  There is no testimony or evidence that the other person had contact with the victim's genitalia that would have caused the vaginal trauma.  That said, Petitioner's argument that the victim was "involved in sexual intercourse" with another individual prior to the assault that would have caused the vaginal trauma is not credible.  Further, while it is true that Petitioner was not charged with engaging in sexual intercourse with his penis, he was charged with, and found guilty of rape and involuntary deviate sexual intercourse based upon the specific allegation that he had forced the victim to perform oral intercourse on him, or intercourse *per os*.  As a result, Petitioner's argument here is not credible.  In sum, Petitioner has not rebutted the presumption of correctness by clear and convincing evidence.  Therefore, relying on that presumption of correctness and absent any proffer of contrary evidence by Petitioner, the court must accept the state court's decision that counsel was not deficient.  Habeas relief on this ground will be denied.

### D.    Ineffectiveness Relating to Variance from Charging Document

Petitioner also claims that counsel, on both the trial and direct appeal levels, was ineffective for failing to object to a variance between the charges as filed and the

evidence presented against Petitioner.[4]  Specifically, Petitioner argues that: (1) he was

prejudiced by the inclusion of evidence unrelated to the charges against him, namely

testimony alleging that Petitioner had committed "rape per vagina (rape in its ordinary

meaning) and rape/involuntary deviate sexual intercourse per anus," (Doc. 10-1 at 21),

(2) that the trial court gave an incorrect jury instruction on this issue, and (3) trial

counsel was ineffective for failing to object to the instruction and appellate counsel

was ineffective for failing to pursue this issue on appeal.  After setting forth the

background to this issue, the court will address the evidence initially, followed by the

jury instructions and effectiveness of counsel.

The court notes the following background on this issue with respect to the state

court record.  As a result of the assault, Petitioner was charged with, *inter alia*, rape,

involuntary deviate sexual intercourse, and several charges of sexual assault,

aggravated indecent assault, and indecent assault.  (*See* Doc. 17-1 at 35-49.)  Further,

the preliminary hearing transcript establishes that the rape and involuntary deviate

sexual intercourse charges were related to the allegation that Petitioner had penetrated

the victim's mouth with his penis (sexual intercourse *per os*), and that the sexual

assault and indecent assault charges were general charges related to the allegations

---

[4]  *See supra* note 3, at 8-9.

24

that Petitioner had penetrated the victim's vagina with his fingers and had contact with her anus.  (*Id*. at 79-81.)  At trial, the victim testified that Petitioner entered her room brandishing a knife and briefly placed it on her neck to keep her quiet.  (*Id*. at 152.) She then testified as follows:

[District Attorney]:      At some point did you feel him touch you?

[Victim]:      Yes.

[District Attorney]:      What part of your body did he touch?

[Victim]:      He started - - I guess he just started putting his fingers in my vagina.

[District Attorney]:      Placed them all the way inside your vagina?

[Victim]:      Yes.

[District Attorney]:      And you indicated it was his fingers?

[Victim]:      Yes.

[District Attorney]:      And what did he do next?

[Victim]:      Then he made me - - I was on my back when that happened.  Then he made me turn back over on my stomach.

[District Attorney]:      Did he penetrate you anywhere else?

[Victim]:      Yes.

[District Attorney]:      Where?

[Victim]:                    In my anus.

                                    * * *

[District Attorney]:          And what happened next?

[Victim]:                    Then he said something about how he was
                             going to have sex with me or I would have to
                             give him oral sex.  And I tried - - I just made - -
                             I told him I had an STD.  I tried to think of
                             anything just so he wouldn't touch me.  And
                             then I was even going to say I was pregnant,
                             and I was trying to think of anything possible
                             so that he wouldn't hurt me.  And then he said I
                             had to do one or the other, so then I gave him
                             oral sex.  And then it hurt too bad in my throat
                             and he was jamming it down my throat.

[District Attorney]:          You are indicating that he made you open your
                             mouth?

[Victim]:                    (Nods affirmatively.)

[District Attorney]:          And he placed his penis inside your mouth?

[Victim]:                    Yes.

                                    * * *

[District Attorney]:          And what happened next, [victim]?

[Victim]:                    I stopped and he got mad.  And he tried to turn
                             me over, and he tried to turn me over and have
                             sex with me.

                                      26

| | |
|---|---|
| [District Attorney]: | And at some point do you know if he ejaculated? |
| [Victim]: | Yeah. |
| [District Attorney]: | When did that happen? |
| [Victim]: | I just finished giving him oral sex, and that's when he did. |
| [District Attorney]: | Do you know where that ended up? |
| [Victim]: | Like on my chest. |

(Doc. 17-1 at 153.)

After closing arguments, the trial court charged the jury with various instructions related to the charges. As related to this issue, the trial court defined "sexual intercourse" as follows:

> Sexual intercourse has a special meaning in the law of rape. A man has sexual intercourse with a female if he penetrates her female sexual organ with his penis to the slightest degree. He does not have to emit any semen. A man also has sexual intercourse with a female if he uses his penis to have intercourse with her mouth or anus. At least slight penetration of the mouth and anus is contemplated, but no emission of semen is required.

(Doc. 17-1 at 247.) Further, the trial court defined "deviate sexual intercourse" as follows:

> Deviate sexual intercourse is sexual intercourse by mouth or by anus between two people. Thus, it is deviate sexual intercourse if a man

27

> uses his penis to have sexual intercourse with the mouth of another woman.  His penis must penetrate the mouth at least slightly.  He does not have to emit semen.

(*Id*. at 248.)  Trial counsel did not object to these instructions.

Petitioner raised this claim in the PCRA proceedings.  In its decision dated December 2, 2008, the PCRA court addresses the sub-issues as follows:

> The charging documents and informations on file essentially charge the [Petitioner] with rape by the oral sexual act described, involuntary deviate sexual intercourse by the same act, and aggravated indecent assault by digital penetration of her vagina.
>
> None of the charged sexual assault offenses set forth specifically anal penetration as the basis for an act of sexual intercourse.  The [Petitioner] complains that this additional bit of evidence, to wit, anal sex, is prejudicial and error and was trial error in the case and his counsel's failure to object thereto should give him PCRA relief.
>
> This Court declines to so rule.  The nature and extent of the sexual assault we believe was properly and completely entered.  It forms the complete history of the case, and Judge Uhler was careful in his instruction phase in regards to the referenced acts of rape and IDSI to instruct that the sole act for the jury's consideration in that regard was the referenced act of oral sexual intercourse.

(Doc. 17-3 at 92-3.)  Further, the Pennsylvania Superior Court affirmed the PCRA court's decision in its February 18, 2010 decision, discussed specifically below.

### 1.   <u>Variance in Charging Document</u>

As stated above, Petitioner argues that he was prejudiced by evidence presented at trial that was not the basis of the charges against him, such evidence being testimony that he penetrated the victim's anus with his fingers and that he penetrated the victim's vagina with his penis.  The Pennsylvania Superior Court addressed this claim as follows:

> The fourth and fifth arguments set forth by [Petitioner] arise out of his contentions that since the Commonwealth had only charged him with sexual offenses for intercourse *per os* and digital penetration of complainant's vagina, the testimony from the complainant that [Petitioner] had penetrated her anus, as well as the resultant jury instructions given by the trial judge caused confusion and prejudice at trial.  Thus, according to [Petitioner], trial counsel should have been deemed ineffective for (1) failing to object to testimony by the complainant that [Petitioner] penetrated her anus, and (2) failing to object to jury instructions that referred to intercourse per anus as a basis for finding him guilty of rape and involuntary deviate sexual intercourse.

> The record here reveals that the Commonwealth originally charged [Petitioner] with rape and involuntary deviate sexual intercourse based upon the specific allegation that [Petitioner] had forced complainant to perform oral intercourse on him.[1]  However, the criminal informations included additional counts based upon the general allegation that [Petitioner] engaged in "sexual intercourse" and "indecent contact" with complainant.[1]  Thus, while the Commonwealth did not set forth a specific allegation of the touching or penetration of complainant's anus, the general averment of sexual intercourse[ ] and indecent contact[ ] listed in the latter counts of the informations subsumed the act of penetration or touching of the anus.[5]  Accordingly, we detect no merit to

---

[5]  The Superior Court set forth the definition of "sexual intercourse" from the Pennsylvania Crimes Code as follows:

> [Petitioner's] underlying contentions (1) that ***all*** of the sexual offenses with which he was charged arose out of either conduct constituting oral intercourse or digital penetration of the vagina, or (2) that evidence of conduct constituting penetration of the anus was not admissible at trial. Thus, we affirm the ruling of the trial court that denied relief upon the argument that trial counsel should have objected to the testimony regarding the alleged anal penetration.

(Doc. 17-3 at 216-18.)

Turning first to penetration of the victim's anus, after reviewing the record, the court finds the state court decision on this issue to be neither contrary to nor an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1). Nor has Petitioner demonstrated that the state court's adjudication of this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2). Importantly, it is noted here with respect to this sub-issue that the state court made a

---

> Section 3101 of the Crimes Code provides: **"Sexual intercourse."** In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required. 18 Pa.C.S. § 3101. Digital penetration does not constitute "sexual intercourse." *Commonwealth v. Kelley*, 569 Pa. 179, 185, 801 A.2d 551, 554 (2002).

(Doc. 17-3 at 217.) Further, the court defined "indecent contact" as follows:

> Section 3101 of the Crimes Code defines "indecent contact" as "**[a]ny touching of the sexual or other intimate parts of the person** for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S. § 3101 (emphasis added).

(*Id.*)

factual finding when it reviewed the record and determined that Petitioner had failed

to show that the testimony from the victim that Petitioner had penetrated her anus

prejudiced him.    Pursuant to 28 U.S.C. § 2254(e)(1), this court must defer to the

factual findings of the state courts unless Petitioner rebuts the presumption of

correctness by clear and convincing evidence.  Petitioner argues that because the

victim did not identify what penetrated her anus - a penis, a finger, or a foreign object,

the jury could have been confused and chosen the penis as the method of anal

penetration.  (Doc. 10-1 at 21.)  However, reviewing the state record as a whole, the

court finds that there was no evidence or argument presented that Petitioner penetrated

the victim's anus with his penis, and therefore no basis for confusion on the part of the

jury.  The indecent contact with respect to the victim's anus did not relate to the jury

charge on sexual intercourse *per os*, the basis for the rape and involuntary deviate

sexual intercourse charges.  In other words, testimony relating to Petitioner's contact

with the victim's anus was not relevant to the charges of rape and involuntary deviate

sexual intercourse, but was relevant to the general averments of indecent contact.  The

Superior Court found the same.  (*See* Doc. 17-3 at 217.)  In the instant petition,

Petitioner has not presented any evidence in support of his contention that testimony

regarding indecent contact with the victim's anus formed the basis for his rape and

involuntary deviate sexual intercourse convictions.  Therefore, relying on the presumption of correctness in the state court determination and absent any proffer of contrary evidence by Petitioner, the court must accept the state court's decision as to this sub-issue, and habeas relief on this ground will be denied.

Turning to vaginal rape by penis, it does not appear that the state courts reached the merits of Petitioner's claim that he was prejudiced by the testimony that he had vaginally raped the victim with his penis.  As such, the deferential standards of AEDPA review do not apply, and the court must perform a *de novo* review.  *See Simmons v. Beard*, No. 05-9001, 2009 WL 2902251, at *6 (3d Cir. Sept. 11, 2009) (citing *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001)(precedential)).  However, any state court factual determination as to the issue is still presumed to be correct, rebuttable upon a showing of clear and convincing evidence. *Id.*  Reviewing the record as a whole, the court concludes that this claim has no merit.  First, Petitioner was never charged with vaginal rape by penis nor was it ever raised during any of the proceedings in this case.  Second, there is nothing in the record to indicate that Petitioner ever penetrated the victim vaginally with his penis.  Finally, the state court made a factual determination as to the events surrounding the assault:

> The nature and extent of the sexual assault we believe was properly and
> completely entered.  It forms the complete history of the case, and Judge

> Uhler was careful in his instruction phase in regards to the referenced acts of rape and IDSI to instruct that the sole act for the jury's consideration in that regard was the referenced act of oral sexual intercourse.

(Doc. 17-3 at 93.)  This determination does not contemplate vaginal rape by penis.  As Petitioner does not rebut this determination with clear and convincing evidence to the contrary, habeas relief on this sub-issue will be denied.

### 2.      Jury Instruction & Ineffectiveness of Counsel

Petitioner also argues that the trial court's instructions on rape and involuntary deviate sexual intercourse caused confusion and prejudice at trial because Petitioner was only charged with sexual offenses of intercourse *per os* and digital penetration of the victim's vagina.  As stated above, the trial court included in its definitions of sexual intercourse and deviate sexual intercourse contact with the anus.  However, in this case, those charges related only to the specific allegation of sexual intercourse *per os*.  As a result, Petitioner argues, the jury may have convicted him of rape and involuntary deviate sexual intercourse based on the testimony regarding his contact with the victim's anus.  To that end, he additionally argues that trial counsel was ineffective for failing to object to the instructions, and appellate counsel was ineffective for failing to raise this on appeal.

Initially, the court notes that the Pennsylvania Superior Court determined that the jury instructions given on rape and involuntary deviate sexual intercourse were in error.  (Doc. 17-3 at 218.)  Specifically, the court found that,

> the record does reveal that the instructions on rape and involuntary deviate sexual intercourse given by the trial court, by either referencing or emphasizing anal intercourse, deviated from the specific allegations of oral intercourse set forth by the Commonwealth in Counts 1-4 of the informations for rape and involuntary deviate sexual intercourse.

(*Id.*)

In reviewing this claim, the court notes that questions regarding the applicability of state law jury instructions during a state court trial fall within the province of the state courts.  *See, e.g.*, *Jones v. Kyler*, Civ. No. 02-09510, 2005 WL 5121659, at *5 (E.D. Pa. Aug. 3, 2005) (citing *Gilmore v. Taylor*, 508 U.S. 333, 344 (1993)).  Further, because "federal habeas corpus relief does not lie for errors of state law" and, more specifically, that it is not within the court's province "to reexamine state-court determinations on state-law questions," *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), the court is precluded from revisiting the Superior Court's determination on this question of state law.  Further, the Superior Court also concluded that Petitioner's claims of trial counsel's deficient performance based on

34

failure to object to the instructions were meritorious.  (Doc. 17-3 at 218-19.)  This court will not disturb this determination.

Turning to the second prong of an ineffectiveness claim, *see Strickland*, 466 U.S. at 687, the Superior Court addressed whether trial counsel's failure to object to the jury instructions resulted in actual prejudice to Petitioner.  (*See id*. at 219-20.) Specifically, the court found:

> Consequently, since we find arguable merit to [Petitioner's] contention that trial counsel should have objected to the jury instructions on rape and involuntary deviate sexual intercourse, we must consider whether [Petitioner] demonstrated actual prejudice as a result of trial counsel's omission.[6]  Here, the principal issue at trial was the credibility of the account provided by the complainant.  The jury, in reaching its verdict, clearly found complainant's testimony that forced sexual acts occurred credible, while contemporaneously discrediting [Petitioner's] explanations.  A further review of complainant's testimony reveals that her account that [Petitioner] had forced her to perform oral intercourse (i.e. "*per os*") was unequivocal.[1]  In contrast, while complainant testified that [Petitioner] penetrated her anus, she provided no basis for the jury to determine that [Petitioner] had used his penis as was necessary to establish ***intercourse per anus***.[1]  Lastly, our review reveals that both trial counsel for the defense and counsel for the Commonwealth repeatedly

---

[6]  The superior court set forth its definition of "actual prejudice" as follows:

Actual prejudice, for the purposes of a claim of ineffective assistance of counsel, means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Commonwealth v. Reaves*, 592 Pa. 134, 154, 923 A.2d 1119, 1131 (2007) (internal quotations and citations omitted).

(Doc. 17-3 at 219.)

emphasized that the basis for the concurrent charges of rape and involuntary deviate sexual intercourse was the allegation of the penetration of complainant's mouth by [Petitioner's] penis, and that the penetration or touching of complainant's anus was only alleged to have been accomplished by [Petitioner's] fingers.[ ]

In light of this record, we detect no basis upon which to conclude that the guilty verdicts on rape and involuntary deviate sexual intercourse resulted from confusion between intercourse *per os* and intercourse *per anus*, or from an improper determination by the jury that [Petitioner] had engaged in intercourse *per anus* with complainant. Consequently, the record reveals no actual prejudice resulting from the improper instructions, and we conclude that [Petitioner] was not entitled to relief on the claim that trial counsel should have objected to the references to intercourse *per anus* by the trial court during its instructions on the charges of rape and involuntary deviate sexual intercourse.[ ]

(Doc. 17-3 at 219-20.)

As with the Superior Court, the question for this court upon review is whether

Petitioner was prejudiced by the erroneous instruction, *i.e.*, but for the instruction

would the outcome have been different. *See Strickland*, 466 U.S. at 694. The court

concludes that this error, in combination with the overall charge to the jury as well as

the credited testimony of the victim and counsel's statements with respect to the

charges, did not prejudice Petitioner. First, despite the erroneous instruction which

referenced anal intercourse, the trial court's overall instruction emphasized that the

rape and involuntary deviate sexual intercourse charges related to the victim's account

that Petitioner had forced her to perform oral intercourse. (Doc. 17-1 at 248) ("it is

deviate sexual intercourse if a man uses his penis to have sexual intercourse with the mouth of another woman"). Further, given the verdict in this case, the jury clearly chose to credit the victim's testimony of the events over the conflicting account of Petitioner. Because the victim did not testify that Petitioner penetrated her anus with his penis, the jury had no basis to conclude that Petitioner had done so. Finally, both counsel made no reference to the rape and involuntary deviate sexual intercourse charges relating to any contact with the victim's anus.

In light of these circumstances, the court concludes that the Pennsylvania Superior Court reasonably found that Petitioner failed to show that he was prejudiced by trial counsel's failure to object. *See Williams*, 529 U.S. at 391; *Strickland*, 466 U.S. at 694. Based on the above-stated evidence, the error in the jury instruction did not have "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 631; *see also Bond v. Beard*, 539 F.3d 256, 276 (3d Cir. 2008). As a result, the state court decision is neither contrary to nor an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1). Nor has Petitioner demonstrated that the state court's adjudication of this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d)(2).

Further, because the court finds no prejudice with respect to the ineffectiveness of trial counsel, appellate counsel cannot therefore be deemed ineffective.  *See Cook*, 45 F.3d at 392-93.  Accordingly, Petitioner's claim does not warrant habeas relief.

### E.  Ineffectiveness for Failing to Challenge on Appeal the Sufficiency of the Evidence

Petitioner argues that his counsel was ineffective for failing to challenge on appeal the sufficiency of the evidence used to convict him of the sexual offenses.  In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court addressed the standards governing insufficiency of evidence claims, holding that "the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 319.  The standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id*. at 324 n.16.  The Court also explained in *Jackson* that circumstantial evidence by itself may suffice for a finding of guilt beyond a reasonable doubt.  *Id*. at 324-25.  The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the factfinder and, therefore, are beyond the scope of federal habeas sufficiency review.  *Id*. at 319.  The Court emphasized that "[o]nce a defendant has

been found guilty of the crime charged, the factfinder's role as weigher of the

evidence is preserved through a legal conclusion that upon judicial review *all of the*

*evidence* is to be considered in the light most favorable to the prosecution." *Id.*

(emphasis in original) (footnote omitted).

The Pennsylvania Superior Court addressed this issue. Specifically, the court

first addressed Petitioner's argument that the jury's acquittal on one count of robbery

negated the element of forcible compulsion with regard to the sexual offenses. (Doc.

17-3 at 226-27.) Citing state law, the court concluded that the acquittal bore no legal

or factual relationship to the jury's finding on the element of forcible compulsion

necessary for the sexual offenses. (*See id.*) (citing *Commonwealth v. Gillen*, 798 A.2d

225, 230 (Pa.Super. 2002) ("it is the jury's sole prerogative to decide on which counts

to convict in order to provide a defendant with sufficient punishment [and an]

acquittal cannot be interpreted as a specific finding in relation to some of the

evidence.")). Thus, acknowledging the jury's finding of forcible compulsion, the

Superior Court then stated that it reviewed the record and determined that the evidence

presented demonstrated that Petitioner had used forcible compulsion. The court stated

specifically:

> As to the contentions that the testimony of the complainant was unworthy
> of belief,[1] our review of the record reveals no basis upon which to

conclude that the discrepancies highlighted by [Petitioner] were so severe as to preclude the jury from determining, beyond a reasonable doubt, that [Petitioner] had (1) used forcible coercion, (2) digitally penetrated the vagina and/or anus of complainant, and (3) placed his penis in her mouth. Accordingly, since we detect no underlying merit to [Petitioner's] arguments that the evidence was insufficient, we affirm the decision of the trial court that appellate counsel was not ineffective for failing to raise these claims.

*Intentionally left blank*

(Doc. 17-3 at 227-28.)[7]  In so finding, the court rejected Petitioner's sufficiency argument that was predicated upon disagreements with the credibility determinations made by the factfinder or discrepancies in the accounts of witnesses, because it was the jury's role to assess the value of this evidence.

Upon review, the court finds no error, of constitutional dimension or otherwise, in the decision of the Pennsylvania Superior Court with respect to this claim.  In

---

[7]  The Superior Court noted the following discrepancies referenced by Petitioner:

• A guest who was staying at the complainant's apartment testified that he used a bathroom next to the complainant's bedroom around the time of the alleged assault but did not hear any unusual sounds in the apartment.  Complainant, however, testified that she was sobbing loudly during the attack and that [Petitioner] struck her in the face.  Brief of Appellant, pp. 44-45.

• Complainant was not able to identify what [Petitioner] used to penetrate her anus. *Id.*, p. 45.

• Complainant testified at trial that [Petitioner] ejaculated on her chest.  However, she made several prior inconsistent statements that [Petitioner] had ejaculated in her mouth, and, when confronted with those prior statements at trial, complainant stated she did not know where [Petitioner] ejaculated.  *Id.*

• The forensic examination of complainant revealed no traces of seminal fluid in complainant's rectum, vagina, labia, or mouth.  *Id.*, p. 46.

• Only small dots of spermatozoa were discovered on complainant's chest and were not visible to the naked eye.  *Id.*, p. 46.

• Complainant testified that when [Petitioner] engaged her in conversation after the alleged attack she could not see the knife allegedly used at the outset of the attack. *Id.*

(Doc. 17-3 at 227-28, note 19.)

considering the governing legal standard, *see Jackson*, 443 U.S. 307, the court agrees with the state courts that Petitioner's appellate counsel was not constitutionally ineffective for failing to present or preserve a sufficiency of the evidence claim with respect to the sexual offenses charged in this case.  Having concluded that the underlying proceedings comported with the constitutional standards enunciated in *Jackson*, the court cannot find that the Superior Court's decision was contrary to, or involved an unreasonable application of federal law.  *See* 28 U.S.C. § 2254(d).  Thus, habeas relief is not warranted on this claim.

## IV.   <u>Conclusion</u>

Based on the foregoing determination that Petitioner's claims are without merit, the court will deny the petition for writ of habeas corpus.  (Doc. 10.)

The court must now determine whether a certificate of appealability should issue.  A court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). This requires that the petitioner "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, the court denies a certificate of

appealability because jurists of reason would not find it debatable that denial of the

petition because Petitioner's claims are without merit is correct.

An appropriate order will issue.


　　　　　　　　　　　　　　　　　　s/Sylvia H. Rambo
　　　　　　　　　　　　　　　　　United States District Judge

Dated:  February 21, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**STEVEN D. OTTO,**                              :
                                                 :
      **Petitioner**          :          **CIVIL NO. 1:CV-10-02193**
                                                 :
  **v.**                                    :          **(Judge Rambo)**
                                                 :
**MICHAEL CURLEY,** *et al.,*                    :
                                                 :
      **Respondents**         :

# O R D E R

**AND NOW**, this 21st day of February, 2012, upon consideration of the petition for writ of habeas corpus (Doc. 10), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 10) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

3) There is no basis for the issuance of a certificate of appealability.  *See* 28 U.S.C. § 2253(c).

                                __s/Sylvia H. Rambo_____
                                United States District Judge

1